Thank you. My name is Ryan Fullerton. May it please the Court, Counsel, I am appearing on behalf of Rainier River Marina Incorporated and Christopher Klick, the appellants in this matter. Your Honor, as a bit of brief background, this case arose out of a September 2013 boating incident in which case an exhaust pipe broke inside an engine compartment of a boat, a 25-foot roughly boat, that Christopher Klick and his friends were fishing on. The boat appeared to be having some engine trouble. Mr. Klick at this time was steering the boat in the wheelhouse of the boat and underneath at the floor of the wheelhouse there is an engine compartment hatch. The hatch was removed by one of Mr. Klick's friends, releasing carbon monoxide into the wheelhouse of the boat. Mr. Klick wakes up about roughly five hours later I think in the dark and finds that his friends are deceased. The district court erred here in interpreting the language of the policy at issue and the pollution exclusion at issue. Where were the friends at the time? I know maybe it's not pertinent. So one of the friends had been feeling nauseous and had decided to take a nap in the interior cabin of the boat. So he passed away in there, Your Honor. So this was presumably not due to the removal of the engine compartment hatch. He was in there and presumably died because of the seepage of carbon monoxide into the cabin of the boat. The other friend of course was the one that removed the hatch. He passed away and fell into the engine compartment. Mr. Klick fell into the engine compartment as well and suffered burns therein but survived. The district court erred in interpreting the language of the policy, applying the law to the undisputed facts of this case. And the question really to boil it down and make it as simple as possible is whether the interior engine compartment of the boat is the atmosphere or natural environment under Board of Regents. If that question is answered in the affirmative that the engine compartment is the atmosphere or natural environment, then the exclusion would apply. But if answered in the negative, then the exclusion cannot apply. I will begin with the threshold issue here, Your Honors, which is the ambiguity issue. I think Travelers has cited in its briefing at the district court and appellate court level that absolute pollution exclusions are unambiguous. I would not like to get into the absolute versus qualified issue here, whether this is an absolute or a qualified pollution exclusion. It simply doesn't matter in this case, but certainly can visit that issue. And there is no case that says that all absolute pollution exclusions are unambiguous. And in fact, the exclusions that are used in these cases vary widely in terms of absoluteness, where some would exclude coverage for the release of a pollutant period, and some, like this one, require that the pollutant be released in a certain location. It says into the atmosphere. Is that the language? Yes. Land, atmosphere, watercourse, or body of water was the Board of Regents case and is similar language used here, almost identical language used here. So in this case where you have a wheel housing and engine compartment and you're out on the lake, what's the atmosphere? What's within the atmosphere and what is something else? I would look at the atmosphere as the Court and Board of Regents instructs us to, or the Royal case, to refer to the natural environment or some part thereof. So you wouldn't have an argument if, let's say, they had a little dinghy next to the big boat and these guys, one of them was on a dinghy away from the larger boat and was overcome by CO fumes. You would accept that the atmosphere was the environment and that the pollution exclusion would apply. Would that be? So long as the damages or liability arose out of a release into the atmosphere. So the release occurs on that dinghy, then yes, I would agree with that. But now our situation is different. The release of the pollutant, the carbon monoxide, occurs within the fishing boat. And the gentlemen are on the boat. Correct. How do you distinguish where atmosphere is? And I know the language that seems to be problematic is this isn't a building. And other cases seem to deal with a building or enclosed area. We have something that is neither a building nor fully enclosed. So how are we to interpret the meaning of the pollution exception under these facts? Yes, Your Honor. The court and Board of Regents dealt with that issue not by, that case concerned a building. Nothing in the case limits its applicability only to a building. The court looked to the natural environment versus the non-natural environment of the building or the controlled environment of the building. The court and Board of Regents cites to an Illinois case, Wilkin Insulation, which states, and I'm paraphrasing, that we don't understand the term atmosphere to refer to the multiple diverse environments in or around buildings, seeming to suggest that if you take a setting such as, I don't know, downtown Tokyo, it's not going to be the natural environment. And certainly in the Board of Regents case, the court's concerned with this natural environment language, not concerned with whether or not we are inside a building. So I would point to the interior of the boat, the mechanical inner workings of the boat, the engine compartment, and suggest that that's not the natural environment. I would also suggest that the wheelhouse of the boat being enclosed on all sides but one, and the pictures show, the pictures of the boat in the joint appendix show that this is a big boat, it's a 25-foot boat, and the wheelhouse is quite large. We've equated that in the briefing before the district court to a garage. Presumably, well, it's a building, so presumably we can all agree that Board of Regents applies there, that it's not a natural environment, a garage. A release there would be a release not into the atmosphere, and if we open that door to the garage and all of a sudden we have all sides but one enclosed, does it convert it to the atmosphere? Was this permanently three-sided, though? Was the back always open or was there a way, like in your garage example, to close it? There was, I believe, a cover that you could put on the boat that would more thoroughly enclose the boat. Is it the kind of cover you put on a boat when you're putting it away to protect the interior? I think it protects from rain while people are on the boat, Your Honor. That's my understanding, anyway. Is the soft top like you'd put over a jeep or I believe it's a Bimini cover is the name of it, so I would think that's accurate, Your Honor. But anyway, so a release into the garage in that setting, and we can think of non-permanent structures as the inside of a circus tent, the natural environment, when you've got people in there, you've got some sort of temperature control, and you don't have this free flow of atmosphere, and so that's, you know, really the issue in this case. Now, what I will say also is that... Is there any kind of ventilation machinery or equipment that was a part of the operation of the boat? The engine located in the engine compartment, Your Honor, yes. So this was an exhaust pipe that attached to the engine, and when it broke... That's the exhaust for the engine. I'm talking about ventilation for that three enclosed area for the wheelhouse itself. Is there some kind of circulation of air from outside other than just what would come around the enclosed area? No, no, Your Honor. Not to my knowledge. I don't know in this case whether the windows of that boat could open some way. I think the pictures show that the windows were closed, and I think that presumably you could mount a small fan in there, but there wasn't one in this case. But to answer the question more directly, no. No ventilation from the front, I suppose, if the boat's in motion. What's the point of release in your view? Well, there must... So as opposed to the mere presence of a pollutant, you know, for example, oil in a barrel could be a pollutant, or in the traditional environmental sense, oil in a pipeline, the oil might be a pollutant, but there's got to be that release before damages can arise. So in the context of the exclusion, when it's released into, let's assume there's an... Whatever it's released into, where in this case was the release? The release that matters was the release into the engine compartment. I know Travelers has said in the district court briefing that it doesn't matter whether it's the first, second, or third, or fourth release. That's true, and there's never been any dispute as to that. The policy, of course, doesn't touch on that. But the policy does require that the damages or liability arise out of a release. And so Travelers has cited to the Brockway case in which a couple of kids playing around on a dock, one friend pushed the other into shallow water, causing damage, and the court found that that arose out of the use of a dock, that that was forecausation that the injuries arose from, flowed from, originated from that release. So we would liken this case to Wakefield Pork. And none of these cases, by the way, have been decided wrongly in our view. We believe that they are... I think the Wolters Court regards the course that Minnesota has taken on this as regrettably harsh in some cases. That may be, but our position, we believe, is consistent with the Minnesota case law on this. So we liken it, circling back to the Wakefield Pork case, in which there was a... in which the damages arose out of the release of pollutants into the atmosphere. That exclusion did contain the atmosphere language. It also required that there be a release or a dispersal. Dispersal was a term used in that policy. Now, the facts of that case were that there was this cesspool full of pollutants at a farm, and property owners nearby alleged damage to their home, saying that under Board of Regents, well, this is pollutant in a home, and so the pollution exclusion doesn't apply. The court held that the pollution, in this case, originated into the atmosphere and subsequently moved. So that's a case similar to this because you have that dispersal language in the Wakefield Pork policy. Why wasn't the movement of the pollutants from the cesspool to the home, why wasn't that a dispersal that these damages arose out of? Well, the court held that because it first went to the atmosphere, that's where the pollution in that case originated, just like in Board of Regents, it originated in a building and did damage there. Here, it originated in the atmosphere. So it's so... and maybe you've answered it, and I just didn't quite understand, but are you saying there's, are there two releases? There's a release into the engine compartment before the man opens the compartment, and then there's a second release into the wheelhouse? Arguably, Your Honor. That point was never made by travelers. I think we anticipated that argument in our opening summary judgment brief at the district court level. Where's the release from your standpoint? The release from our standpoint is into the engine compartment. Clearly the natural believe in air and not atmosphere, even if there was atmosphere on the deck of the boat, it's simply not important that the damages in this case arise from that first release into the engine compartment. Why is that critical? I mean, the policy isn't limited to releases. The exclusion isn't limited to releases. It includes dispersal and migration and so forth. Correct. I've been using the release language to encompass all of that, but certainly, yes, it can be made that the opening of the engine compartment was a movement or a release or, you know, or what have you, into the wheelhouse of the boat. Now that brings us to the second question. Escape of the pollutant into the wheelhouse, migration into the wheelhouse. So you're not saying we should focus only on the release in the engine compartment, are you? I am because the damages must arise out of a release of pollutants into land, atmosphere, watercourse, Why couldn't they arise out of the escape of the pollutant into the wheelhouse? Well, that brings us to the to the the Brockway case. The other arising out of, I think, Faber v. Roloff was a case where a city was sued or a school was sued for its bus scheduling and negligence. A child fell down, tripped and fell and was run over by a bus, something like that. And that arose out of the use of an automobile. So and to talk about this case, just so I can understand your position, why doesn't the injury here arise out of an escape or migration of the pollutant into the wheelhouse? Because but for the release into the engine compartment, there could be no damages. Now, not the case with the release into the wheelhouse, necessarily. The parties have agreed that carbon monoxide is extremely deadly and could cause damage up above the deck. And so it is clear, absolutely clear that there could not have been damages caused by carbon monoxide. And the parties agree it's caused by carbon monoxide had there not been the release of carbon monoxide into the engine compartment. Not necessarily true that the release into the wheelhouse of the boat. Would you have had a case if there was no wheelhouse cover? I believe so, your honor. And I don't want to get too much into these analogies like I've been doing, but in Board of Regents, that was not a sealed building. Nothing about it was sealed. You have students milling in and out. And if the injury asbestos flakes occurred when a person was standing at the doorway, would that have been a release into the atmosphere? And I don't think so. But certainly, and I just like to compare this. I realize I'm out of time. I'd like to compare this briefly to, well, continental casualty versus advanced terrazzo, which was an eighth circuit case, a much broader pollution exclusion. I would suggest that travelers could have used a much broader exclusion if it had wanted to. The market should decide these things. And the market here spoke when travelers offered this more limited pollution exclusion. I intended to reserve some time, your honor, but I will yield unless there's any more questions. Thank you, Mr. Fogarty. Thank you. Ms. Ertz. Good morning. On behalf of Apelli Travelers, Property Casualty Company of America and counsel in court, we would request that the judgment and order of the Honorable Donovan Frank be affirmed by this court, really for two reasons. One, Judge Frank correctly applied the law in this case. He held at joint appendix 80 that the pollution exclusion applies when the pollutant issue is released directly into ambient or outdoor air, and conversely does not apply when the pollutant is released into the air inside of an enclosed structure, such as a house or other building. Judge Frank also properly applied the stipulated facts to the unambiguous language of the pollution exclusion, holding at joint appendix 82 to 83. Here, the undisputed facts show that Click's injuries occurred while the fishing boat was outside on Lake of the Woods. Due to an engine malfunction, carbon monoxide gas built up in the fishing boat's engine compartment before it was released into the open air when the compartment was opened. The carbon monoxide then traveled into the wheelhouse where Click was standing and caused Click's injuries. The wheelhouse and roof had three sides but was open in the back because the pollution exclusion applies when a pollutant is released directly into the atmosphere, i.e. ambient air. It applies in this case where carbon monoxide gas was released into the unenclosed air surrounding the fishing boat. I want to point you to the Board of Regents case, which is the 1994. Does it not matter that the area was at least partially enclosed? No, not under Board of Regents. Board of Regents draws a very fine distinction, and in that case there was a primary policy and an umbrella policy that had two different languages. The primary policy was similar to the traveler's policy at issue in this case because it used the word atmosphere and other words that were similar to the natural environment, watercourse, waterway, those kinds of languages. Board of Regents, and if you look, this was a judge sim in that case from 1994, the Court of Appeals in that case had said, and this is at 892 of Board of Regents, the Court of Appeals said to draw such a distinction between the air inside and outside a building is an arbitrary distinction. Not inside an enclosed space, inside or outside of a building at 892. The Minnesota Supreme Court at 893 says, at one level, the distinction we make may seem to draw a fine line, but words are deliberately chosen, and we believe the words atmosphere here is contextually sound and functionally pertinent. And they say again at 893, the term atmosphere, we think, refers to the ambient air. Ambient air means outside air, external air, air outside of a building. Well, this, in this, the boat is capable of being enclosed on four sides. If I understand the boat, it's not soft-sided on three sides, correct? I thought it might help. And these are all in the joint appendix. JA41. And so three of those sides are hard? Of the wheelhouse. Of the wheelhouse. Yes. So if you put, if you had put the soft back on it and it was enclosed, you're still saying it's not, it's atmosphere, not air, even though it would be enclosed? I am because it's not a building. And I think the distinction that the Minnesota Supreme Court drew in Board of Regents is air inside of a building, atmosphere outside of a building. And that's the distinction. This is not a building. It wasn't fully enclosed. It was on a lake. He was outside in the natural environment when the carbon monoxide leak occurred. So you're saying under no circumstances could, would there be coverage because it's a boat? That's right. I think Board of Regents is key. And the key is on pages 892 and 893. So even a houseboat, something that someone is in, it's enclosed on all four sides? Unless the Minnesota Supreme Court goes back on another case and changes the law. But this is the fine line, the distinction they drew in 1994 between the words atmosphere and a pollution exclusion. And the distinction is air inside or within a building, atmosphere, air outside of a building. And if you actually look at what the, the dissenting judge, Judge Gardabring says, I find nothing in the word atmosphere, which limits it to meaning outdoor air. But that's exactly what the Minnesota Supreme Court did. They drew a fine line and said air within a building. Outside air is different than air within a, that's not the, you're saying the distinction is building, but, but, but the air inside a houseboat or something else that's enclosed is, is not outside air. Well, the distinction that the distinction that the Minnesota Supreme Court drew in 1994 was when I'm looking at a policy that uses the word atmosphere, that means air outside of a building. And when I'm looking at, at, at air, it's air within a building. And that's a distinction. Ambient air means air outdoors, external air outside of a building. And, and 892 to 893 of, of Board of Regents makes that very, very clear. The other thing that I think that appellant wants to do in this case is talk about the wheelhouse being an enclosed space or the engine compartment being an enclosed space. Again, that's, that, that misses the distinction that was drawn by the Minnesota Supreme Court between air inside of a building or atmosphere outside of a building, which I think is important. But secondly, it, it's not factually accurate to say that, that those are enclosed spaces, that the engine was enclosed, an enclosed space. It didn't have a canopy on the back. I mean, the, the photograph was very, very clear that, that the wheelhouse is completely open to the deck and the outside air while it was on the lake. And once the engine compartment, I mean, and, and nobody had been injured. Nobody, nobody was injured until they pulled the hatch off of the engine compartment. Mr. Click is standing at the helm inside of the wheelhouse and once the engine compartment comes out, comes off, that is when they're overtaken by the carbon monoxide fumes. And so that is the event, the release that causes the carbon monoxide to free flow in the, in the atmospheric air, the outside ambient air. So it, it, it isn't because if the, if the cover had remained on, we maybe have a different case where they make it to shore. But that isn't, that isn't factually what happened here. Also factually, this wasn't a houseboat. And so we're not dealing with, you know, a hypothetical situation where some people are inside of a houseboat when a carbon was out on a very large lake of the woods with the wind blowing, the breezes blowing through throughout the day and as they're, they're coming back. And, and so it isn't the houseboat situation. It's not a camper situation. It's not a tent situation. That, that's not what we're, we're here on stipulated facts. We've got the photos so we know exactly what happened. And, and we are dealing with the unambiguous and on all courts in Minnesota that have dealt with either qualified or absolute pollution exclusions have found the language to be unambiguous. So in this case, it's simply a matter of applying the Board of Regents distinction to the language in the, in the traveler's policy. And under, under that, under that set of circumstances, I believe Judge Frank got it right when he applied the distinction drawn by the Minnesota Supreme Court to the undisputed facts in this case. There, they also wanted to try to segregate out kind of the two different releases. I think the, the honorable judge is right. It doesn't matter if there's one or two, the policy language doesn't say, well, we'll only cover the first release or, or we only exclude if it's the third release. It, it doesn't matter how many times there is a release. If the injury arises out of the release of a pollutant, which carbon monoxide is according to the 2013 Wolters court, it's undeniably a pollutant that's not disputed. It doesn't matter how many times it's released, whether it releases, whether it migrates, if it is in the, the atmosphere, which is the language in, in the traveler's policy. And that's where he was when he was injured. It applies and then it excludes coverage. They also had wanted, and I wanted to talk a little bit because they talk about, well, he, you know, he falls in, he falls into this engine case. Law's very clear that you can't separate out different events to get coverage for one. I mean, if it's excluded for one, it's excluded, it's excluded for all say that last thing again, you can't say, yeah, you can't separate out, you can't separate out events. So the fact that he has a burn injury from falling into the engine compartment, he falls into the engine compartment because of the carbon monoxide poisoning. So you don't get coverage for the burn injury because it arose out of the carbon monoxide poisoning is essentially the, the point I'm trying to make. Any other questions? I see none. If, if not, then we, I ask on behalf of travelers that judge Donovan's decision be affirmed. Thank you. All right. Mr. Fullerton, I believe you used up all your, your time. Um, I think we've got a pretty good view of the case and, uh, both sides have submitted to us, uh, excellent briefing. So we'll take the case under advisement, render decision in due course. All right. Madam clerk. I believe